The Rule 60B motion to vacate the judgment was properly made in the District Court the last time that the Supreme Court tried this case and that entered the judgment that was sought to be vacated. Because the District Court's original jurisdiction was provided for by statute, and the Supreme Court in this case held that the District Court was the only case that could enter final judgment, it was appropriate to file the motion to vacate that judgment in that court. As I will explain, Pelley's arguments that the motion had to be filed in the bankruptcy court or that this court's permission had to be sought first are both red herrings. Let me turn first to the issue of recall of the mandate. In the Standard Oil case, the United States Supreme Court expressly held that a Rule 60B motion that is based on events that occur after the appeal and after the remand of the case back to the trial court. In such a case, it is not necessary to seek recall of the mandate. The Texas Court of Appeals ruling did not disturb any of the probate court's factual findings. Why doesn't this make your Rule 60B motion meritless? Well, the Texas Appellate Court essentially vacated, it didn't use that term, but it struck from the judgment, the Texas judgment, specific findings of fact. And those findings of fact, as the court explained, what was important about them was that they all had a similar effect. That is, the Texas Appellate Court made it clear that the only issue that was being tried by the probate court was issues concerning the estate and living trust. That being true, it certainly would have an impact on the question of whether there was issue preclusion in our case where the Ninth Circuit felt that the Texas probate court had an issue. The Texas Appellate Court had effectively ruled on the question as to whether there could be third-party tort liability. And that, of course, was the issue in our case. Thank you. Thank you. Going back to the issue of the recall of the mandate, contrary to Appellee's argument that it doesn't matter whether the appellate remand was open or specific, that has nothing to do with whether recall of the mandate is required in a 60B situation. The Supreme Court's rationale in the case was, quote, the appellate mandate relates to the record and issues then before the court and does not purport to deal with possible later events. Are you reading from Standard Oil? I am. So suppose we agree with you that the district court got the rule of mandate wrong. Should we proceed to the merits of the Rule 60B motion or should we remand it to the district court and have the district court look at it and, you know, with knowing that it actually has jurisdiction? I think that what is appropriate in this case, as is the general rule, would be to remand it to the district court for its input. I mean, the fact of the matter is there is really no court that is more familiar with the facts of this case and how the facts apply to the law than the district court that tried the case. Input from that court, its view of the interaction between the facts and the law, I think would be of enormous assistance to this court in reviewing any further appeals. Well, if we decide the district court erred in concluding that it lacked jurisdiction to review the 60B motion, can't we affirm on any one of Marshall's alternate grounds supported by the records? I think this Court is empowered to do so, but the question is, is it appropriate to do so? And particularly in a case of this magnitude, I mean, I don't have to tell this Court, I'm sure. This case has been pending... A third time with this case? That's right. This case has been pending for more than 20 years. It has gone through more iterations than I have ever seen. My understanding is that from the district court was that this is the largest record of any case that has ever been tried in the Southern District of California. This is an enormous case. That is a very good reason why it would be important to get the input from the district court before this court rules on any of the other issues. Mr. Virchel, I want to come to the rescue of the district court, because why, as Judge Nelson suggests, aren't there a number of reasons that we can address the merits? Tell me why the analysis of the Ninth Circuit the last time isn't the correct result today. The reason why... Because I don't see how the Texas Appellate Court changed the earlier Texas judgment on the merits and issue preclusion. Well, what the Texas Appellate Court did was it made it very clear that what was not being adjudicated by the probate court was anything with respect to Pierce Marshall's potential liability. By clarifying that point, it changed really the context in which this court looked at that case. The findings of fact that were specifically changed in this case, for example, had to do with the question as to whether it was appropriate for there to be a finding that there had been any misconduct by Pierce Marshall. That is, was the original estate and living trust disturbed by Pierce Marshall? And that fact, I think, doesn't consider other factors that are present here, which is, for example, that there was other wrongdoing that was proved in this case. The other wrongdoing was that Pierce Marshall, in effect, disposed of the inter vivos trust that was being prepared for the benefit of Vicki Lynn Marshall. And that factor is very critical to liability in this case. When that factor is considered in light of the fact that the Texas Appellate Court decided that the Texas Probate Court did not adjudicate anything with respect to those issues, it becomes really important for those issues to be considered anew by the district court in light of the entire record. So you're talking about the facts underlying the tortious interference claim, right? Yes. Well, what the Texas court clearly held was that there was no gift and there was no interference by Pierce Marshall, right? Well, how did those findings affect the tortious interference claim that you assert survives in this case? Yes, it's very important that the entire finding that was left intact be considered. What the Texas Probate Court found was that there was no interference, that Pierce Marshall did not intend, I'm sorry, Jay Howard Marshall did not intend to give a gift from the living trust or from his estate. That's really critical because in this case, in our case, the evidence was that the living trust itself provided for the fact that monies could be expended by Jay Howard Marshall, separate from the living trust. He was permitted under the living trust to borrow money against the estate. And that was one of the findings that the district court made in this case. And that in and of itself could be a basis for finding of wrongdoing. And for finding that there was an intent beyond just what was the intent with respect to the living trust and the estate. What is the theory of your tortious interference claim? I'm sorry. So explain, what is your theory of the tortious interference claim? What did allegedly Pierce Marshall interfere with? Yes. What Pierce Marshall did was the evidence showed that what Pierce Marshall did was that he became aware of the fact that his father had instructed his lawyers to compose an inter vivos trust for the benefit of Vicki Lynn Marshall. What he then did was he instructed those lawyers not to do that. There was some evidence that there was time actually spent by those lawyers in preparing the living trust. But no one was ever to find it again. The living trust, there were billing records that showed that they had spent time working on the inter vivos trust. But the inter vivos trust itself, the actual. That is separate from the living trust. That's right. I'm sorry, it is. The inter vivos trust was the trust that was being put together and intended to be put together for the benefit of Vicki Lynn Marshall. The living trust was another state document that Pierce Marshall was the beneficiary of. So the theory of. You went and saved five minutes. Yes, I did. You're down to four minutes. Okay, thank you very much, Your Honor. Thank you. Thank you. Good morning, Your Honor. Eric Brunstad on behalf of Elaine Marshall, executrix of the estate of E. Pierce Marshall. Judge Nelson, I'd like to address your question point blank. As Rule 60B-5 requires, you can set aside a prior judgment if a judgment has been. It is based on an earlier judgment that has been reversed or vacated. Of course, as we know in this case, the earlier judgment, the judgment of the Texas Probate Court, on which this court in its 2010 decision ruled there was issue preclusion, was affirmed by the Texas Appellate Court. It was affirmed. That's expressed in the very first part of their opinion. But Mr. Richland says otherwise. He says it was vacated. It was not, Your Honor. And if we look at the record, we look at the copy of the decision. If you go to the very first page, which is excerpts of the record, page 360, the court said, we additionally modify the trial court's judgment and affirm the judgment as modified. Now, there were three modifications, all of which are completely non-material. If the court looks to the record. But use his phrase, effectively vacated is wrong. You said it's modified. It's not just wrong, Your Honor. It's a mischaracterization of what the Texas Appellate Court did. Okay. It affirmed the Probate Court's judgment. Texas practice allows the Texas Appellate Court to make some modifications. And the reason why it's important, I think, to have this look at the decision, rather than the reported decision, is because the decision we have in the record is the actual copy of the judgment of the Texas Appellate Court. And it shows the very minor interlineations it did on certain findings. Paragraph 3.36 on page 412. Paragraph 3.1 on page 410 of the record. And it dropped the word abandoned and substituted non-suited in the opinion. That's it. It left untouched, if the court were to look at ER 407 and 408, the key findings that were the basis of the issue preclusion analysis of this court in 2010. The Texas Appellate Court affirmed the Texas Probate Court's jurisdiction to decide the issues it decided, including with respect to did Jay Howard intend to give Vicki a gift. The Appellate Court affirmed the key finding, the key finding, paragraph 3.37, that this court quoted in its 2010 decision that Jay Howard never intended to give Vicki a gift. Of course, that is fatal, as this court concluded in 2010, to their theory. Their theory is that Jay Howard intended to give a gift and Pierce interfered. But if there was no intent, there can be no cause of action. And the finding in 3.37, this court quoted as the basis for its issue preclusion analysis, the Texas Appellate Court affirmed in unmodified form. So we see. Let me ask you a question. Yes, go for it. How do you respond to the argument we heard today that there's evidence that Howard Marshall intended to create an inter vivos trust? Yes, Your Honor. For Vicki Willamette Smith? Yes. So there was a five-and-a-half-month jury trial. That argument was made to the Texas jury and rejected. Five-and-a-half-month jury trial, all of those arguments about undue influence and Jay Howard intended to give her money, Jay Howard intended to give her a gift in the form of a trust, all of those were rejected. Judge Carter held five days of hearings on appeal from a bankruptcy court decision. It was a de novo appellate proceeding. How do we know it was an appellate proceeding? Because Judge Carter said so in his order below. And also the court looks at page 510 of the ER records list of the docket sheets. The very first entry, which shows the district court's jurisdiction, is the notice of appeal that Pierce filed from the bankruptcy court to the district court. We had appellate jurisdiction in this case. We had a de novo review of the bankruptcy court's judgment. There were five days of hearings that Judge Carter heard. And Judge Carter came to various conclusions, but all of those had previously been determined against Vicki Lynn Marshall in the Texas probate court after a five-and-a-half-month jury trial. All of those findings, those key findings, finding 3.7, Jay Howard never intended to give her anything, finding 3.4, Pierce engaged in no misconduct in his father's estate plan. Those were affirmed by the Texas appellate court. Now, to conclusively establish this, if the court looks to its own decision in 2010 on pages 1062 and 1063, this court quoted finding 3.37 as the basis for its issue preclusion analysis. This court said, Vicki Lynn Marshall cannot establish her claim of tortuous interference with an intent because the probate court found, after the jury verdict, Jay Howard Marshall, quote, did not intend to give and did not give to Vicki Lynn Marshall a gift or request from the estate of Jay Howard Marshall or from the living trust, either prior to or upon his death. He didn't intend to do it. Right. So, oh, I'm sorry. Go ahead. Mr. Brunstad, can I get to, are you still sticking with your argument as to the rule of mandate? Correct, Your Honor. This court's decision. Perhaps I'm overly sensitive as a district judge, but it seems to me that the mandate rule only applies to the things that were decided post-mandate happenings. Can't they be the subject of a 60-B-5 matter and evidentiary hearings and new decision by the district court? Well, Judge Pratt, here's why this case is special. Okay. In this case, on page 1040 of this court's 2010 decision, this court didn't just simply reverse and remand. It said, quote, we reverse the judgment of the district court and remand with instructions that judgment be entered in favor of the estate of E. Pierce Marshall, close quote. This is an instruction case. We get told that all the time. That's not different than most appellate decisions I see. Is it different than what appellate decisions you see? Yes, Your Honor. We have this specific instruction to enter a judgment. It's not an open remand. And I think the Thrasher decision from 2007 from this court establishes that when there is a mandate with an instruction, the lower court is without jurisdiction. It's a jurisdictional bar. Now, standard oil was not a mandate case. It was not a rule of the mandate case. It was a summary affirmance and an open remand. I submit that that is a distinction. Mr. Brunstad, let me interrupt. The district court has come forward and said the testimony in Texas was based on perjury and bribery. Could the district court address that? The district court, I think, could address that. But I think that the proper vehicle in the narrow instance in which the court of appeals has issued an instruction is to come to the court of appeals and set aside the mandate. What case do you have for that? What authority do you have for that proposition? There are three, Your Honor. One is the Supreme Court's decision in Sanford Fork from 1895, the Supreme Court's decision in the Sprague case from 1939, Stamper, the Fourth Circuit decision that we cited below and Judge Carter quoted. So those are the three main. Do you have a Ninth Circuit case? Just the Thrasher case. It's not quite as specific, I think, as Your Honor is looking for. But there's a key point that I'd also like to make. Judge Nelson, I think you hit the nail on the head when you said, can we look at this from the merits and say you have no entitlement to a relief here under Rule 60B. Can't we affirm on that ground? And, indeed, one of the cases that we cite in our brief is the Pease case. Quote, it is well established that Rule 60B requires the movement to demonstrate that he possesses a meritorious cause of action, close quote. So not only can he not do that because the Texas appellate court affirmed the key findings of the Texas probate court, he cannot do that because the Texas Supreme Court has now told us in two decisions there is no such cause of action as tortious interference. Now, in the Kinsel case and then most recently this year in Archer v. Anderson, the Texas Supreme Court has said we do not recognize this cause of action. The cause of action stems from the decision in King v. Acker from the Texas appellate court decision in 1987, which the Texas Supreme Court has now expressly overruled. They cannot cite to a single Texas decision that has adopted their theory. All of them have now been overruled by Archer v. Anderson. And that's critical. The distinction they draw is said, well, we're arguing tortious interference with a gift. And that case was tortious interference with inheritance rights. But they are branches of exactly the same tree. If the Court looks at the Texas Supreme Court's decision in Archer v. Anderson, the cause of action is quoted in star four. The cause of action, the plaintiff has to show a defendant is subject to liability for interference with inheritance or gift. It's either one. If the plaintiff had a reasonable expectation of receiving an inheritance or gift. This is now section 18 of the restatement, which was formerly section 774B. The Texas appellate court, Texas Supreme Court authoritatively said we do not recognize this cause of action. And it did so for reasons that apply equally in this case. That it is up to the legislature to create a new cause of action. That this type of tort remedy conflicts with Texas law. That's exactly the case here. Saying that Texas recognizes a cause of action for tortious interference with a gift is completely contrary to the Texas law of gifts, which requires not only an intent to give a gift, but also delivery and acceptance of the gift. Did you make that argument to the district court? Yes, Your Honor. But also, this is an argument which we could not have made in full. We could not have cited the Arthur v. Anderson case to the district court because it wasn't decided until this year after the appeal was filed. The district court did not consider that. The district court did not consider it. But here's why I submit Your Honor must. It goes to this court's jurisdiction. Because where there is no viable cause of action, the cause of action has been abrogated. There is no longer an Article III case or controversy. That deprives this court of its appellate jurisdiction to proceed. But do we really know? I mean, the case isn't exactly on point. We do really know, Your Honor, because it simply branches of the same theory and all of the reasons for— But we're having to make a guess about Texas law and how it would apply in this case. Well, making an eerie guess, Your Honor, but we also have pending if Your Honor has any doubt that they have not shown that this cause of action actually exists, and they haven't, that Your Honor can certify the question to Texas Supreme Court. We have that motion pending. We've said all along this cause of action does not exist. We have a motion for certification pending. But I submit there is no doubt. But you have a motion for certification pending in this court? Correct, Your Honor. Do you have another? Do you have a motion for summary adjudication to— We have a motion to dismiss the appeal as moot. We cite for that proposition this Court's decision in Denbigh Care. This Court's decision in Denbigh Care involved a situation where pending appeal the California cause of action that was at issue, the tort of denial of contract, was abolished by the California Supreme Court. This Court ruled the appeal on that issue was moot. And where something is moot, the Court lacks jurisdiction. And for that, I cite the two Supreme Court cases, Your Honor. The first is the Church of Scientology of California case where the Supreme Court said, quote, it has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions or to declare principles or rules of law which cannot affect the matter at issue in the case before it. Thus, the Supreme Court said, for that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatsoever to the prevailing party, the appeal must be dismissed, close quote. So this Court applied that principle in Denbigh Care and dismissed an appeal of an issue as moot. And it has—Your Honor, I submit because it's Article III jurisdiction, it goes to the jurisdiction of this Court, no case or controversy. And again, the basis for that is the cause of action does not exist. And if there is no cause of action, then you can't have a Rule 60B motion to reinstate a cause of action that doesn't exist. Now, again, it's their burden under 60B to show that there is, in fact, a meritorious cause of action. They haven't shown it. And the—I think that if—when you look through the Texas appellate decisions and where they can cite to not a single Texas court that hasn't been overruled that accepts their theory, they cannot show that the cause of action exists. I'd also like to make the point that the district court in this case— another jurisdictional point—the district court in this case was clearly exercising appellate jurisdiction. It was hearing an appeal from the bankruptcy court. It was an intermediate appellate court in this case. The statute governing its jurisdiction is 28 U.S.C. section 158A, which allows the district court to hear appeals. Rule 60B does not apply to an appellate court exercising appellate jurisdiction. It doesn't apply to the district court exercising appellate jurisdiction any more than it would apply for this court if someone filed a Rule 60B motion here. The rules that apply that govern the appellate procedures in the district court sitting as an appellate court in bankruptcy are the Part 8 rules of the Federal Rules of Bankruptcy Procedure. But was it sitting as an appellate court? When the district court converted the bankruptcy judgment into proposed findings, its jurisdiction, it seems to me, was no longer appellate under 28 U.S.C. 158A, but instead original under section 1334B. No, Your Honor. And the reason for that is the conversion of the findings of fact simply makes them— that's not a jurisdictional question. That has to do with the standard of review that is applied. Just like this court exercises standard of review in reviewing questions of law de novo, that doesn't make this court's jurisdiction not appellate jurisdiction. The jurisdictional statute is 28 U.S.C. section 158, which clearly says the district court has jurisdiction to hear appeals. The rules that apply are very clearly the Rule 8001 through 8026 of the Federal Rules of Bankruptcy Procedure. We know that because Rule 81 of the Federal Rules of Civil Procedure tell us that the Federal Rules of Civil Procedure do not apply in bankruptcy proceedings unless they're specifically incorporated. Rule 9024 allows Rule 60B motions in the bankruptcy court, but not in the district court sitting on appeal. So there was no jurisdiction to hear the motion, and there was no authority for the relief in the district court. So we have several jurisdictional problems. One is the rule of the mandate. Frank Hansler, we're hearing your brief, and you've also gone over your time. So thank you very much. Thank you very much, Your Honor. Judge Nelson, you're entirely correct. When the bankruptcy courts, what it purported to enter a final judgment, but when that was determined by both the district court here, by this court, and by the United States Supreme Court, to be only findings of fact and conclusions of law, then the jurisdiction that the district court assumed was original jurisdiction to try the case, to make findings of fact, and to enter a final judgment. It could only be original jurisdiction at that point because it would be the first case and the only case that constitutionally could enter a final judgment in the case. So it is entirely correct. It is true that that court's jurisdiction was triggered by the notice of appeal that was filed. But the only reason that happened was because the bankruptcy court had held that it could enter a final judgment. So it was appropriate to enter a notice of appeal. That then became the original jurisdiction as it was tried, as it was originally tried. Let me just briefly talk about the Archer v. Anderson case because that was a five to four decision of the Texas Supreme Court. It did not purport in any way, shape, or form to rule upon the particular tort that was alleged here, which was the interference with an inter vivos gift. Archer v. Anderson was entirely talking about the tort of interference with inheritance. And the rationale of the case entirely is that because of probate procedures that operate fully to take care of any kind of problem with respect to an alleged interference, it was unnecessary to recognize that tort. The court, it was a five to four decision, and four justices of the Texas Supreme Court said, you know what? There could be circumstances where even an interference with inheritance would be an appropriate remedy. Mr. Richland, though, aren't you talking to us about claim preclusion, whereas the issue is issue preclusion? Counsel says the jury determined in every way you can make out that there was no undue influence of any kind. And therefore, that issue and that finding is binding the district court, the court of appeals, and the Supreme Court have to apply it. What the jury found in the Texas probate action was that there was no undue influence on J. Howard Marshall. What it did not determine was the issue that was determined by the district court in our case, which was that Pierce Marshall had absolutely unduly influenced the inter-fivos trust that was to be for the benefit of Vicki Lynn Marshall. And the other side has played on the confusion with respect to those throughout this case. But the fact of the matter is it was a completely different issue that was at the heart of the case here. I would ask the court and refer the court to the Sterling versus Marshall decision from the Texas probate court, appellate court at 471 Southwest 3rd 525. There the court for several paragraphs goes on and says, we agree with our side that the trial courts rendering judgment on any of Vicki's claims against Marshall, the third estate or living trust cannot purport to adjudicate or foreclose because tortious interference claims because the court explained the only thing that was being adjudicated in that case was impact upon the estate or living trust. Once it is recognized that the estate and living trust are separate from the funds that Jay Howard could have used to fund the inter-fivos trust that was to be for Vicki Lynn Marshall's benefit. Then it becomes clear as to why none of the findings in that Texas case could have foreclosed and been preclusive of what went on in the, in the district court. Unless there are any other questions, we will submit the matter. All right. Thank you. Counsel. Thank you. Marshall B. Stern will be submitted.
judges: D.W. Nelson, Wardlaw, Pratt